**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LONGNECKER PROPERTY, et al., | ) | |
| | ) | |
| For Themselves and As Representatives | ) | |
| of a Class of Similarly Situated Persons, | ) | No. 09-173L |
| | ) | |
| Plaintiffs, | ) | Judge Marian Blank Horn |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO
CLASS COUNSEL'S MOTION FOR COURT APPROVAL OF FEES
AND PROPOSED DIVISION OF THE COMMON FUND**

SAM HIRSCH
Acting Assistant Attorney General

BRUCE K. TRAUBEN
Trial Attorney
U.S. Department of Justice
Environmental and Natural Resources Division
Natural Resources Section
P.O. Box 7611
Washington, D.C. 20044
(202) 305-0238
(202) 305-0506 (facsimile)
bruce.trauben@usdoj.gov

ATTORNEYS FOR DEFENDANT

Dated:  September 24, 2014

**TABLE OF CONTENTS**

I.  INTRODUCTION ...............................................................................................................1

II.  As a Fiduciary for the Class, the court Should Ensure All Criteria Warranting an
Award of Attorneys' Fees Calculated as a Percentage of the Total Compensation
Have Been Met .................................................................................................................3

   A.  Whether the common Fund Doctrine Applies in an Opt-in Class Action ..............4

   B.  If the Common Fund doctrine Applies, the court Must Determine Whether it Is
Appropriate to Award Fees Based Upon a Percentage of that Fund ......................5

   C.  Regardless of What Method the Court Uses to Calculate Attorneys' Fees, The
Court Should Perform a Lodestar Check on the Reasonableness of the Fee
Award.................................................................................................................11

III.  CONCLUSION.............................................................................................................11

# TABLE OF AUTHORITIES

## Cases

*Allen v. United States,*
606 F.2d 432 (4th Cir. 1979)....................................................................2

*Applegate v. United States,*
52 Fed. Cl. 751 (2002) ..................................................................... 4, 8

*Blum v. Stenson,*
465 U.S. 886 (1984) ........................................................................7, 8

*Boeing Co. v. Van Gemert,*
444 U.S. 472 (1980) ........................................................................... 4

*Brytus v. Spang & Co.*
203 F.3d 238 (3d Cir. 2000) ...............................................................4, 5

*Bywaters v. United States,*
670 F.3d 1221 (Fed. Cir. 2012) ............................................................. 8

*City of Burlington v. Dague,*
505 U.S. 557 (1992)...........................................................................8

*City of Detroit v. Grinnell Corp.,*
560 F.2d 1093 (2d Cir. 1977).................................................................2

*Freeman v. Ryan,*
408 F.2d 1204 (D.C. Cir. 1968)..............................................................2

*Goldberger v. Integrated Res.,*
209 F.3d 43 (2d Cir. 2000) ......................................................... 2, 8-11

*Haggart v. United States,*
116 Fed. Cl. 131 (2014) .................................................................. 2, 7

*Holbrook v. Pitt,*
748 F.2d 1168 (7th Cir. 1984) ............................................................. 4

*In re Cont'l Ill. Sec. Litig.,*
962 F.2d 566, 568 & 572 (7th Cir. 1992).................................................9

*In re Fed. Nat'l Mortg. Ass'n Sec. Litig.,*
No. 04-1639, 2013 WL 6383000 (D.D.C. Dec. 6, 2013) ................................. 3, 11

*In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.,*
724 F. Supp. 160, 163 (S.D.N.Y. 1989)...................................................9

*In re Vioxx Prods. Liab. Litig.*,
   760 F. Supp. 2d 640 (E.D. La. 2010) .................................................................... 3

*Jackson v. United States*,
   881 F.2d 707 (9th Cir. 1989) ................................................................................. 2

*Knight v. United States*,
   982 F.2d 1573 (Fed. Cir. 1993) ............................................................................. 4

*Moore v. United States*,
   63 Fed. Cl. 781 (2005) ....................................................................................... 6-7

*Pennsylvania v. Del. Valley Citizens' Council for Clean Air*,
   478 U.S. 546, 565 (1986) .......................................................................................3

*Perdue v. Kenny A. ex rel. Winn*,
   559 U.S. 542, 551 (2010) .......................................................................................8

*Staton v. Boeing*,
   327 F.2d 938, 967 (9th Cir. 2003) .........................................................................6

*Swedish Hosp. v. Shalala*,
   1 F.3d 1261 (D.C. Cir. 1993) ................................................................................. 2

*Venegas v. Mitchell*,
   495 U.S. 82 (1990) ................................................................................................. 5

*Voth Oil Co. v. United States*,
   108 Fed. Cl. 98 (2012) ........................................................................................... 5

**Statutes**

42 U.S.C. § 4654(c) ............................................................................................... 3, 7

**Rules**

RCFC 11(b)..................................................................................................................7
RCFC 23(h)...............................................................................................................3, 11

**Miscellaneous**

1 Alba Conte, Attorney Fee Awards §§ 2.02, 2.08 (2d ed. 1993) ..................................9

iv

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6 (4th ed. 2002) ...............8

4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:7 (4th ed. 2002) ............11

H.R. Rep. No. 91-1656 (1970),
   1970 U.S.C.C.A.N. 5850, 1970 WL 5881 ................................................................................6

10 James. Wm. Moore, Moore's Federal Practice, § 54.171[2][a] (3d ed. 2013) ...........................4

Manual for Complex Litigation (Fourth) § 14.11 (2004) ...............................................................5

Manual for Complex Litigation (Fourth) § 14.121 (2004) ..........................................................11

The United States hereby responds to Class Counsel's Motion for Court Approval of Fees and Proposed Division of the Common Fund, filed on September 10, 2014 (ECF No. 103) ("Class Counsel's Mot. for Fees").

## I.    INTRODUCTION

Class Counsel asks the Court to award him 35% of a purported common fund derived from the settlement of this case, resulting in a total award of $3,708,814.03 as attorneys' fees. *See* Class Counsel's Mot. for Fees 6.  In support of this award, Class Counsel contends that his firm has expended approximately 2,000 hours litigating this action.  *See id.* at 5. Assuming that estimate of expended hours is accurate (no documentary support or declarations were submitted to the Court),[1] Class Counsel seeks an award of fees at an average hourly rate of approximately $1,850 per hour ($3,708,814 divided by 2,000 hours) for each hour expended by partners, associates and paralegals.  Because the United States is not liable to pay this fee — if approved by the Court it would be deducted from the share of the settlement otherwise slated as just compensation for the members of the class — we are not in this case taking a position on Class Counsel's Motion for Fees.  Nevertheless, the United States believes that the Court may not grant Class Counsel's Motion for Fees unless it is well supported by both the facts and law. Class Counsel bears the burden of persuasion, and it is not clear to the United States that he has met his burden.

Class Counsel may argue that, because the United States is not liable to pay the fees sought in his motion, it does not have standing to make any argument in response.  That is

---

[1] In connection with the parties' settlement negotiations, however, Class Counsel provided a billing statement to the United States that reflected 1,978.9 hours of attorney and paralegal time were spent on this matter from February 12, 2009 through August 27, 2013.  The United States takes no position on the accuracy of that billing statement or on the appropriateness of the work referenced therein.

incorrect.  Other courts faced with this question have held that the United States has standing

because it is a party to the case in chief.  *See Jackson v. United States*, 881 F.2d 707, 709 (9th

Cir. 1989) ("for lack of a better term . . . the government has 'ancillary standing' by virtue of its

status as a party to the case in chief sufficient for [the court] to reach the merits of the attorney

fees issue"); *see also Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 n.1 (D.C. Cir. 1993)

(finding that this standing issue "previously has been resolved in favor of affording the

government standing," (citing *Freeman v. Ryan*, 408 F.2d 1204, 1206 (D.C. Cir. 1968); *Allen v.

United States*, 606 F.2d 432, 434 (4th Cir. 1979); *Jackson*, 881 F.2d at 709)).  As a party to this

action, the United States thus has standing to respond to Class Counsel's Motion for Fees.

Class Counsel's Motion for Fees creates a conflict of interest between Class Counsel and

members of the Class.  In such a situation, there is no one at counsel's table to speak on behalf of

the class members.  To protect the interests of the class, therefore, "the [C]ourt is to act as a

fiduciary who must serve as a guardian of the rights of absent class members."  *Goldberger v.

Integrated Res., Inc.*, 209 F.3d 43, 52 (2d Cir. 2000) (quoting *City of Detroit v. Grinnell Corp.*,

560 F.2d 1093, 1099 (2d Cir. 1977) (internal quotation marks omitted)); *see also Haggart v.

United States*, 116 Fed. Cl. 131, 144 (2014) ("The court acts as a fiduciary for the class in these

circumstances and must independently assess the reasonableness of class counsel's request for

fees.").[2]  In its role as a fiduciary, the Court must determine whether the fees requested by Class

---

[2] *Haggart* currently is pending before the Court of Appeals for the Federal Circuit on an appeal
filed by two class members, a husband and wife, who objected to certain terms of the settlement
reached in that case.  *See Haggart v. United States*, No. 14-5106 (Fed. Cir.).  In their informal
opening brief, the objector-appellants, appearing *pro se*, argue that the judgment should be
vacated on the ground of inadequate disclosure.  *Haggart*, Opening Br. at 5, 18-19, 20-21
(attached hereto as Exhibit A).  The objector-appellants also challenge the court's award of
contingency fees calculated as a percentage of a purported common fund, arguing that the
settlement does not create a common fund, that Congress intended statutory fees under the
Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §

Counsel are reasonable under the circumstances.  *See* RCFC 23(h) ("In a certified class action, the court may award reasonable attorneys' fees . . . .").

While the "ultimate goal is reasonableness . . . reasonableness, like beauty, is often in the eye of the beholder."  *In re Vioxx Prods. Liab. Litig.*, 760 F.Supp.2d 640, 649-50 (E.D. La. 2010).  Consequently, to test the reasonableness of the fee award, some courts perform a "lodestar check."[3] *See id.* at 658-62; *see also In re Fed. Nat'l Mortg. Ass'n Sec., Deriviative, & "ERISA" Litig.*, No. 04-1639 (RJL), 2013 WL 6383000, at *13 & n.20 (D.D.C. Dec. 6, 2013) (confirming the reasonableness of a fee award by performing a lodestar cross-check).  The United States believes that such a cross-check on the reasonableness of the award would be appropriate in this case.

## II.   As a Fiduciary for the Class, the Court Should Ensure All Criteria Warranting an Award of Attorneys' Fees Calculated as a Percentage of the Total Compensation Have Been Met

Class Counsel's Motion for Fees raises numerous issues, including: (1) whether the settlement creates a common fund rather than an aggregation of individually determined claims in varying amounts; (2) whether the common fund doctrine applies in an opt-in class action; (3) if a common fund is created and the common fund doctrine applies, whether fees assessed against that fund should be computed as a percentage of total compensation or by the lodestar

---

4654 ("URA"), to be the exclusive basis for an award of attorneys' fees in a takings case, and that the attorneys' fees awarded in *Haggart*, regardless of the legal basis, were grossly excessive. *See id.* at 11-19.

[3] The lodestar figure is "the product of reasonable hours times a reasonable rate" and presumably results in a reasonable fee.  *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986).

method; and (4) regardless of which method is applied to compute fees, whether the fees to be awarded are reasonable under the circumstances.

### A.  Whether the Common Fund Doctrine Applies in an Opt-in Class Action

The common fund doctrine is an equitable doctrine that applies where a court has jurisdiction over a "fund" and where equity requires spreading the fees among both clients and non-clients who benefit from the litigation.  *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); 10 James. Wm. Moore, Moore's Federal Practice § 54.171[2][a] (3d ed. 2013).  The Court should commence its analysis by determining whether this settlement creates a common fund.  In some circumstances, an obligation to pay individual claims does not create a common fund.  *Knight v. United States*, 982 F.2d 1573, 1582 (Fed. Cir. 1983) (finding common fund doctrine inapplicable because the doctrine requires, *inter alia*, "identification of a common fund as to which the government is merely a stakeholder"); s*ee also Holbrook v. Pitt*, 748 F.2d 1168, 1176 (7th Cir. 1984) (obligation of HUD to provide retroactive housing assistance payments does not create a fund where there are no "earmarked accounts subject to the control of HUD at the United States Treasury"); *Applegate v. United States*, 52 Fed. Cl. 751, 760-61 (2002) (in a non-class action, holding that a common fund was not created where compensation was not distributed to individuals who were not parties to the litigation).  In any case, whether a common fund is created by the settlement is a threshold issue that the Court should address.  In his motion, Class Counsel merely assumes that such a fund exists.  *See* Class Counsel's Mot. for Fees 6-11.

Even if the Court concludes that a common fund exists, it does not necessarily mean that the common fund doctrine applies in this case.  *See Brytus v. Spang & Co.*, 203 F.3d 238, 243 (3d Cir. 2000).  The common fund doctrine is an equitable doctrine to prevent the unjust

enrichment of certain class members who would reap the benefits of the litigation without contributing to its costs. *See* Manual for Complex Litigation (Fourth) § 14.11 (2004) ("If attorneys' efforts create or preserve a fund or benefit for others in addition to their own clients, the court is empowered to award fees from the fund."); *see also Brytus*, 203 F.3d at 245-47 (holding that the District Court did not abuse its discretion in refusing to grant attorneys' fees from the common fund because there was no inequity to redress). In an opt-in class action where all of the claimants are known at the outset, it is not apparent why this Court should exercise its equitable powers to make a common fund award of attorneys' fees where Class Counsel could have entered into a fee agreement with each claimant. By entering into a fee agreement with each claimant, the rule of *Venegas* would apply. *See Venegas v. Mitchell*, 495 U.S. 82, 90 (1990) (holding that the fee-shifting statute applicable to civil rights actions does not interfere with the enforceability of a contingent-fee contract). Because Class Counsel is not asking the Court to enforce a contingency fee agreement *Venegas*, however, does not apply. Class Counsel thus erroneously relies upon *Venegas* and various CFC decisions in which it has been followed. *See*, *e.g.*, Class Counsel's Mot. for Fees 8 (quoting *Voth Oil Co. v. United States*, 108 Fed. Cl. 98 (2012) (citing *Venegas*, 495 U.S. at 90)).

### B.   If the Common Fund Doctrine Applies, the Court Must Determine Whether it Is Appropriate to Award Fees Based Upon a Percentage of that Fund

If the Court finds that the common fund doctrine applies under the circumstances of this case, it then must decide how a reasonable attorneys' fee should be calculated. Class Counsel assumes without any analysis that a percentage share of compensation should be awarded. *See* Class Counsel's Mot. for Fees 6-11 (citing cases where a percentage of compensation was awarded). While other courts in Trails Act takings cases have awarded a percentage of

compensation as a fee award, none of those decisions has taken a hard look at whether a percentage, rather than the lodestar amount, is appropriate.

The leading case in which the CFC awarded attorneys' fees as a percentage share of a purported common fund is *Moore v. United States*, 63 Fed. Cl. 781 (2005).  In *Moore*, the CFC approved a settlement for 288 claims, including $1,655,276 in principal, $2,326,531 in interest, and $1,000,000 for attorneys' fees and expenses under the URA.  Class counsel then filed a "Motion for Contingency Fee" seeking 40% of the asserted common fund, defined to include principal, interest and the URA fees (but not expenses).  *Id*. at 785-86.  The CFC did not consider whether the settlement created a "common fund," or whether the common fund doctrine applies when there are no absent, or non-client class members, but did consider whether common fund fees should be awarded in addition to the URA fee.  It concluded that a request for a percentage of the award in addition to the URA fee was not inappropriate, citing the Ninth Circuit's decision in *Staton v. Boeing,* 327 F.2d 938, 967 (9th Cir. 2003).  *Moore*, 63 Fed. Cl. at 786.  But *Staton* is inapposite because a statutory fee was not actually awarded, although one was available had the case proceeded to judgment instead of being settled.  The Ninth Circuit did not endorse the award of *both* a statutory fee and a fee from the common fund.

The CFC in *Moore* also expressed its view that "limit[ing] class counsel to the amount collected as URA fees … is obviously an unsuitable result" because "[a]n additional purpose of the URA was to encourage settlement of takings claims by giving plaintiffs the ability to attract counsel."  *Moore*, 63 Fed. Cl. at 788 n.13 (citing H.R. Rep. No. 91-1656 (1970), *reprinted in* 1970 U.S.C.C.A.N. 5850, 1970 WL 5881).  According to the *Moore* court, if "counsel could only recover its fee award under the statute, counsel would have an incentive not to settle." *Id.* Congress, however, expressed no concern that the URA fee would be inadequate to attract

counsel, requiring a substantial percentage of the moneys otherwise slotted for the property owners to be redirected to the class counsel.  While URA fees are paid by the United States in addition to the compensation award, a contingency fee award comes from a common fund reducing the amount landowners receive in compensation.  As a result, an award of fees under the common fund doctrine actually undercuts Congress's primary purpose of making property owners whole.  The CFC's statement in *Moore*, 63 Fed. Cl. at 788 n.13, that "counsel would have an incentive not to settle" if counsel were limited to the URA fee award overlooks the fact that the URA provides fees when a takings case settles as well as when it proceeds to judgment for the plaintiff.  *See* URA, 42 U.S.C. § 4654(c).[4]  While it may be true that limiting a recovery to URA fees may seem to discourage an early settlement, such would be the case in any takings action that is not certified as a class action.[5]  Consequently, *Moore*, and the cases following *Moore* relied upon by Class Counsel, provide little guidance for the Court in this action.

In *Haggart*, the court held that "the percentage-of-recovery method [for calculating a common fund fee award] is widely used to assess the reasonableness of fees."  *Haggart*, 116 Fed. Cl. at 145 (citing *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' . . . a reasonable fee is based on a percentage of the fund bestowed on the class.").  In *Blum*, however, the Supreme Court held that the lodestar method must be applied with respect

---

[4]  "The court rendering a judgment for the plaintiff in a proceeding brought under section 1346(a)(2) or 1491 of Title 28, awarding compensation for the taking of property by a Federal agency, or the Attorney General effecting a settlement of any such proceeding, shall determine and award or allow to such plaintiff, as part of such judgment or settlement, such sum as will in the opinion of the court or the Attorney General reimburse such plaintiff for his reasonable costs, disbursements, and expenses, including reasonable attorney . . . fees, actually incurred because of such proceeding."  42 U.S.C. § 4654(c).

[5]  The incentive to not settle and increase the amount of recoverable attorneys' fees is counterbalanced by the ethical obligation imposed by RCFC 11(b) on counsel to not engage in dilatory legal tactics, as well as by the discretion of the court to award only reasonable attorneys' fees under the URA.

to the statutory fee at issue – a contingency fee based upon the common fund doctrine was not at issue.  Since *Blum*, courts have expressed different preferences as to whether the starting point for common fund fees should be the lodestar or a percentage of the recovery.  *See Goldberger*, 209 F.3d at 48-49.

The Federal Circuit has explained that "[i]n determining the amount of reasonable attorneys' fees under federal fee-shifting statutes, the Supreme Court has consistently upheld the lodestar calculation as the 'guiding light of [its] fee-shifting jurisprudence.'"  *Bywaters v. United States*, 670 F.3d 1221, 1228-29 (Fed. Cir. 2012) (quoting *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010)).  "[T]here is a 'strong presumption' that the lodestar figure represents a 'reasonable' attorney fee," *id.* at 1229 (quoting *City of Burlington v. Dague*, 505 U.S. 557, 562 (1992)), and "enhancements to the lodestar figure may be awarded in only 'rare' and 'exceptional' circumstances," *id.* (quoting *Perdue*, 559 U.S. at 552).  The Federal Circuit held in *Bywaters* that this Supreme Court precedent governs the calculation of fees under the URA.  *Id.* at 1228 ("[n]othing in the language or legislative history of the URA suggests that it should receive a different construction than other fee-shifting statutes").

Courts that start with the lodestar in common fund cases often enhance that amount.  "Multiples ranging from one [no enhancement] to four frequently are awarded."  4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:6 (4th ed. 2002).  Excellent results and the risk of not recovering any fees have been the typical reasons given for an enhancement.  However, "[b]ecause acknowledgement of the 'results obtained' generally will be subsumed within other factors used to calculate a reasonable fee, it normally should not provide an independent basis for increasing the fee award."  *Blum*, 465 U.S. at 900; *see also Applegate*, 52 Fed. Cl. at 771-73 (denying request to enhance the lodestar fee award).  Other criteria in

determining a reasonable common fund fee have included "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . .; (4) the quality of the representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prod. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989).

In Trails Act takings cases, large compensation amounts are primarily a function of the value of the property rather than class counsel's exceptional skill or effort, especially here where the parties engaged in settlement negotiations and retained a joint appraiser to arrive at the amount of compensation. *See* Class Counsel's Mot. for Fees 3-4. In this case, we believe that Class Counsel should have to demonstrate that there is an equitable reason for an enhancement that was not permissibly considered in calculating the statutory fee.

The specific percentage (35%) Class Counsel requested is at the high end among percentage fee awards. "[D]istrict courts across the nation have apparently eased into a practice of 'systematically' awarding fees in the 25% range, 'regardless of type of case, benefits to the class, numbers of hours billed, size of fund, size of plaintiff class, or any other relevant factor.'" *Goldberger*, 209 F.3d at 51 (quoting Third Circuit Task Force, *Court Awarded Attorney Fees*, 108 F.R.D. 237, 274 n. 32 (1985) (collecting cases)). Awards in the 25% range have "been justified on the theory that a reasonable fee should reflect prevailing rates in the relevant market, and that 25% — as a 'formula born from judicial practice and experience' — reflects the best estimate of what the market practice would be in a typical common fund case." *Id.* (citing 1 Alba Conte, *Attorney Fee Awards* §§ *2.02*, *2.08* (2d ed. 1993); *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 568 & 572 (7th Cir. 1992)). While counsel deserve reasonable compensation, "[t]he problem is that [the court] cannot know precisely what fees common fund plaintiffs in an

efficient market for legal services would agree to, given an understanding of the particular case and the ability to engage in collective arm's-length negotiation with counsel." *Id.* at 52. Thus, in *Goldberger*, the Second Circuit affirmed the district court's award of fees based upon the lodestar method, which were supported by adequate findings and consistent with the Court of Appeal's preference for moderation. *Id.* at 57.

Additionally, while engaged clients may have agreed to a 35% contingency fee award, there is no evidence that opt-in claimants were notified of the percentage fee that Class Counsel intended to seek *prior to opting-in*.[6] The court-authorized notice to potential class members in this case merely states, "[i]f the case is unsuccessful, you will have no obligation for attorneys' fees or costs." Notice of Opportunity to Participate in Class Action, filed Dec. 2, 2009 (ECF No. 20-1); *see also* Legal Notice Authorized by the U.S. Court of Federal Claims, filed Dec. 2, 2009 (ECF No. 20-3); Order, ¶ 2, filed Jan. 5, 2010 (EFC No. 22) (directing class counsel to mail a copy of the proposed notice to potential class members). This statement merely implies that if successful, the class member may have an obligation for attorneys' fees and costs, but it provides no notice as to the magnitude of that potential obligation.[7]

---

[6] Without providing any specific details or documentary support, Class Counsel notes in his motion that he explained to all class members "from the beginning of this case" that he would be seeking an award of attorneys' fees of 35% of the recovery. Class Counsel's Mot. for Fees 2 n.4.

[7] While most of the class members have not objected to Class Counsel's fee request (*see* Notice filed Sept. 22, 2014 (ECF No. 104)), it does not mean that they affirmatively approve of the amount of the attorneys' fees sought by Class Counsel. At this late stage of the proceedings where class members have no opportunity to opt-out of the class, they might not object, for example, to expedite payment of money that they may consider to be a gift, rather than because they believe the attorneys' fees requested are reasonable.

**C. Regardless of What Method the Court Uses to Calculate Attorneys' Fees, The Court Should Perform a Lodestar Check on the Reasonableness of the Fee Award**

Whether the lodestar method or percentage of recovery method is used as the starting point, the fee must be "reasonable." RCFC 23(h). Some appellate courts have required that, when a trial court utilizes the percentage of recovery method, the percentage fee be "cross-checked" against the lodestar to ensure that the percentage fee does not yield a windfall to the attorneys. *Goldberger*, 209 F.3d at 50-52; *see also* Manual for Complex Litigation (Fourth) § 14.121; 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:7. The United States believes that the Court should perform a lodestar cross-check to ensure the reasonableness of the fee award.

For example, in *Fannie Mae*, the district court approved class counsel's requested fee of about $29 million (22% of the $153 million settlement after deducting expenses) as reasonable given that it was only a fraction (thirty-one percent) of the lodestar of about $94 million computed using historical rates for the 300,000 hours class counsel worked over the 10-year litigation. *In re Fed. Nat'l Mortg. Ass'n Sec. Litig.,* 2013 WL 6383000, at *13.

**III. CONCLUSION**

Acting as a fiduciary on behalf of the class, the Court should determine whether Class Counsel has met his burden of persuasion to show that: (1) a common fund has been established under the circumstances of this case; (2) inequities exist warranting application of the common fund doctrine; (3) a percentage of the recovery should apply rather than the lodestar method for calculating attorneys' fees; and (4) the attorneys' fees he seeks are reasonable in light of a lodestar cross-check. It is not apparent from Class Counsel's Motion for Fees that he has met his burden.

Respectfully submitted this 24th day of September, 2014.

SAM HIRSCH
Acting Assistant Attorney General


By s/ *Bruce K. Trauben*
        Bruce K. Trauben
        Trial Attorney
        U.S. Department of Justice
        Environmental and Natural Resources Division
        Natural Resources Section
        P.O. Box 7611
        Washington, D.C. 20044-7611
        (202) 305-0238
        (202) 305-0506 (facsimile)
        bruce.trauben@usdoj.gov

        ATTORNEYS FOR DEFENDANT