**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| LONGNECKER PROPERTY, et al., | ) | |
| | ) | |
| For Themselves and As Representatives | ) | |
| of a Class of Similarly Situated Persons, | ) | No. 09-173L |
| | ) | |
| Plaintiffs, | ) | Judge Marian Blank Horn |
| | ) | |
| v. | ) | |
| | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**EXHIBIT A**

**APPELLANTS' OPENING BRIEF IN**
***HAGGART v. UNITED STATES*, NO. 14-5106 (FED. CIR.)**

*Pro Se* Petitioners' Amended Responses to Informal Briefing in
*Haggart et al v. United States,* Federal Circuit Court of Appeals, No.14-5106

2.   *Did the trial court incorrectly decide or fail to take into account any facts?*
     Yes.  *If so, what facts?*

     The lower court incorrectly decided that:

     a.   "There is no dispute that this settlement creates a common fund
          under longstanding precedents"
               Reported Opinion & Order, at 12, fn 13 [A12]

     b.   "RCFC 23(h) permits the court to award "reasonable attorney's
          fees and nontaxable costs that are authorized by law or by the
          parties' agreement."
               Reported Opinion & Order, at 12 [A12]

     c.   "the contingency fee agreement signed by the initial class
          plaintiffs ... (was) made available to all class members during
          the opt-in period"
               Reported Opinion & Order, at 14, fn 14 [A14]

     d.   "This scaled methodology...prevents a windfall resulting from
          the unusually high value of the land at issue.  Correlatively, the
          "lodestar cross-check," (citation omitted) "also confirms the
          reasonableness of a scaled approach to an award of fees from
          the large common fund."
               Reported Opinion & Order, at 19 [A19]

     e.   "To disallow a contingent fee in this case would be contrary to
          precedent, *see e.g. Venegas,* 495U.S. at 90..."
               Reported Opinion & Order, at 19, fn 18 [A19]

     f.   "In sum, the court finds the settlement terms to be fair,
          reasonable, and adequate."
               Reported Opinion & Order, at 12 [A12]

2. *Did the trial court incorrectly decide or fail to take into account any facts?*
Yes. *If so, what facts?* Continued:

The lower court failed to take into account that:

f.    The Legislative History of the Uniform Relocation Assistance and
Real Property Acquisition Policies Act (the "URA"), 42 U.S.C.
Section 4654 ( c ), clearly shows that the purpose of the
government paying all reasonably incurred attorney fees and
expenses in taking cases is to allow landowners to keep 100% of
their taking claim compensation, i.e. to make the landowner
whole and to ensure that it is the government, not the landowner,
who pays plaintiffs' attorneys fees. The prime sponsor of S. 1,
Senator Edmund Muskie, said that

> "the bill sets forth a congressional mandate of twelve
> provisions which must be followed in the taking of
> property for Federal purposes. They are as follows:
>
>     First. Transactions must be carried out in a manner
>     that will assure that the person whose property is taken is
>     no worse off economically than before the property was
>     taken..."

URA Legislative History, S. 1, Senate Floor Remarks,

*Congressional Record, Senate, October 27, 1969,* Page 31533,

*UNIFORM RELOCATION ASSISTANCE AND ACQUISITION*

*POLICIES ACT OF 1969,* passed with unanimous consent.

Senator John Sherman Cooper added that

> "Providing just compensation, and equitable assistance to those who are displaced, so that their lives are not unduly disrupted by public projects and they are kept 'whole' as we say, is not simple or easy. But it is right and necessary."

*Ibid.*

The lower court failed to take into account that:

g.   The landowners were to be kept whole, were to keep 100% of their just compensation, and were not required by law to pay any attorney fees and expenses actually incurred as a result of the government's taking.   The lower court did not address these critical facts and the congressional mandate in its decision.

h.   The award of URA attorneys fees in taking cases is a mandatory fee shift so that the government pays all reasonably incurred attorneys fees to fulfill the congressional mandate to keep the landowner 100% whole.

i.   This Circuit Court's decision in *Bywaters v. United States*, 670 F.3d 1221 (2012) was not carefully considered by the lower court, and there was no recognition that "the district court [in *Bywaters*]

Page 3

approved the proposed settlement after finding that the proposed

settlement would secure 100% of the just compensation due to

class members with eligible claims..." *Bywaters,* at 1225.

j.    The lower court failed to recognize that the URA with its lodestar

attorneys fees is the pathway for attorney fee awards in taking

cases, not RCFC 23(h). *Bywaters,* at 1227 (An "award of fees

thus depends on construction of the URA and not Rule 23".) The

lower court failed to recognize the strong presumption that URA

lodestar fees reasonably compensates counsel for actual time,

effort, and results.

The lower court failed to take into account that:

k.    Class Counsel never reviewed the above pertinent statutory

history or case law with his clients, the class claimants.

l.    Class Counsel never provided these claimants with the Joint

Motion to approve the settlement which stated that "the amount

of the attorney fees and costs under the applicable provisions of

the Uniform Relocation Act, 42 U.S.C. Section 4654 ( c ), have

been agreed upon....class counsel and counsel for the United

States submit that the proposed settlement is fair, reasonable, and

adequate" [A140].

The lower court failed to take into account that:

    m.    Class Counsel never gave class claimants sufficient information that all attorney fees would be paid by the government so that claimants did not have to reduce their just compensation to pay any fees.

    n.    Class Counsel refused repeated requests by Petitioners over a six-month period to obtain the actual documentation which addressed Petitioners' property rights and the value of its taking by the government.

    o.    Petitioners needed this documentation in order to prepare for the Fairness Hearing. The lower court acknowledged that Petitioners "expressed frustration at being denied the details", Reported Opinion & Order, at 6 [A6], but it failed to address the right of the Petitioners to receive this documentation.

    p.    The Washington Rules of Professional Conduct (RPC) mandates that "A lawyer shall: promptly comply with [his client's] reasonable requests for information". Washington RPC 1.4 [A152-153]

The lower court failed to take into account:

q.   Petitioners' written objections which detailed the factual and legal shortcomings with both the proposed settlement and Class Counsel's supplemental application for additional, "common fund" attorney fees, after Class Counsel had already stipulated that the $1,920,000.00 URA lodestar attorney fees were fair, reasonable, and adequate.

r.   The expert attorney fee declaration of attorney Peter S. Ehrlichman, which declared that

> The express language of the URA section does not contain any provision for collecting enhancements to lodestar attorney fees or for requesting such enhancements, apart from this federal statute after the URA lodestar fees are determined...All reasonably and actually incurred attorneys fees and expenses are to be recovered solely in accordance with the express language of the statute...There is no other method or avenue to recover attorney fees where the URA applies and where the URA is part of an overall plan to provide full compensation to eligible claimants without deduction for attorney fees and expenses.

> Class Counsel proposes to take enhanced fees of almost $40,000,000 out of his clients' just compensation. That is outrageous. Not only is it wrong, but it deprives each client of the full value of his or her claim...the purpose of the URA is to make the eligible claimant whole and to ensure that each claimant receives 100% of claimant's Fifth Amendment taking claim. Any other outcome would

defeat the purpose of the Act. Depriving the claimants of full, just compensation is not fair, equitable, legal, or just.

Class Counsel attempts to obtain excessive, exorbitant fees from his clients' just compensation under an inapplicable, equitable common fund theory. That equitable theory for the recovery of attorney fees is unavailable to Class Counsel where there is a mandatory award of fees under the URA.

[A56-57].

The lower court failed to take into account:

s.    The sworn declaration of Objector Gordon Arthur Woodley [A154-190], even though the lower court accepted the sworn declaration of D. Michael Young [A145-151], in addition to hearing his live testimony.

t.    The lower court failed to take into account the Petitioners' Reply [A24-28] (to Class Counsel's Post Hearing Briefing [A63-67]), which debunked Class Counsel's claim that the *Venegas* decision, not *Bywaters*, was controlling authority on the facts of this case. And the lower court failed to give any reason why it would not even consider this rebuttal, after it allowed [A60] class counsel's post-fairness-hearing briefing.

u.    The lower court failed to take into account that *Venegas* was not a takings case and that it did not involve the URA or the URA's mandatory, complete fee-shifting, where the government, and not the claimant, pays attorney fees and expenses actually incurred in the litigation. *Venegas* was a Civil Rights case and its Section 1988 attorneys fee provision was only permissive, not mandatory. Section 1988 was not designed to make the claimant whole, with the claimant keeping 100% of the just compensation, as is the case with Section 4654, as interpreted by this Court in *Bywaters*.

3.   *Did the trial court apply the wrong law? Yes.*
     *If so, what law should be applied?*

The lower court should have applied the law that pertained to awarding

attorney fees in Fifth Amendment Taking Claims cases:

a.   The Uniform Relocation Act, 42 U.S.C. 4654 and Section c
     [mandatory URA lodestar attorney fees] with its congressional
     mandate to keep landowners whole;

b.   *Bywaters v. United States,* 670 F.3d 1221 (Fed. Cir. 2012)
     (honoring the congressional mandate that eligible class claimants
     are to keep "100% of the just compensation"), supra at 1225;

c.   *Perdue v. Kenny A.,* 559 U.S. 542, 130 S. Ct. 1662 (2010)
     (quoting with approval from *Pennsylvania v. Delaware Valley*
     *Citizens' Council for Clean Air,* 478 U. S. 546, 565 (1986):

     > A strong presumption that the lodestar figure–the product
     > of reasonable hours times a reasonable rate–represents a
     > "reasonable" fee is wholly consistent with the rationale
     > behind the usual fee-shifting statute...These statutes were
     > not designed as a form of economic relief to improve the
     > financial lot of attorneys...

d.   *City of Burlington v. Dague,* 505 U.S. 557, 130 S. Ct. 2638, 2643-
     44 (1992) ("we hold that enhancement for contingency is not
     permitted under the fee-shifting statutes at issue...Contingency

enhancement    is therefore not consistent with our general rejection of the contingent-fee model for fee awards, nor is it necessary to the determination of a reasonable fee.")

e. *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 51 (2d Cir. 2000) (applying a lodestar cross-check when common fund attorneys fees are appropriate) ("Starting an analysis with a benchmark could easily lead to routine windfalls where the recovered fund runs into the multi-millions." *Id.* at 52.) Cited by the lower court [A18], but not followed or applied.  No meaningful lodestar cross check was conducted by the lower court.

4.    *Did the trial court fail to consider important grounds for relief? Yes.*
      *If so, what grounds?*

        a.    The trial court failed to consider the legislative history of the

URA and its congressional mandate that landowners are to be

kept whole with them receiving 100% of their just compensation.

Any deduction for attorneys fees and expenses would run afoul of

the congressional mandate and defeat the purpose of the

mandatory fee-shifting statute where it is the government which

pays for all reasonable attorneys fees and expenses which were

actually incurred.  Not the landowners, who are entitled to keep

100% of the just compensation for the government's taking their

property.  As prime sponsor, Senator Edmund Muskie, declared

on the Senate Floor in 1969 at the time of the bill's passing with

unanimous consent:

> Transactions must be carried out in a manner that
> will assure that the person whose property is taken is
> no worse off economically than before the property
> was taken...

*Supra.*

Class counsel taking millions of dollars from his landowner

clients' just compensation ensures that his clients are *not made*

*whole* and that they are *worse off economically than before the property was taken*, thereby defeating the very purpose of the congressional mandate.

b.   By not following this Court's decision in *Bywaters* and its clear direction that the pathway for attorney fees in Fifth Amendment taking cases is the URA, not Rule 23(h), the lower court misadventured into even considering additional attorneys fees, after it already found the $1,920,000 URA lodestar attorney fees to be paid by the government was fair, reasonable, and adequate [A12]. Not only were there to be no enhancements for contingency, *Dague,* but there were no findings that this case was the "rare" or "exceptional" case, *Perdue,* providing no ground to multiply the lodestar fees. *Bywaters,* at 1229.

c.   This is not even an equitable, common fund situation:

1)   There is no common fund, contrary to the lower court's assertion on page 12 of its opinion [A12]. A common fund is a pool of money which every claimant has a right to draw from.  Here, there is merely an aggregation of individually determined claims in varying amounts which

were compromised and rounded off to $110,000,000 for purposes of settlement and payment by the government. These individual claims can be analogized to individual bank accounts. Petitioners have no right to invade the Haggarts' account, any more than the Haggarts have a right to invade the Youngs' account. Just like bank accounts. No one would claim that the total sum of the accounts held in a bank were a "common fund". Likewise, one should not be claiming that these individual accounts of 253 claimants is a "common fund". And certainly no one should be permitted to invade these accounts under the guise of the inapplicable common fund doctrine. Especially not where that someone has already been allowed ample compensation for all reasonably incurred fees that were stipulated to as being fair, reasonable, and adequate by counsel, the government, and the lower court. Especially not where asking for additional fees conflicts with express purpose of the congressional mandate. And especially not where the compensated counsel has a

fiduciary duty to faithfully represent the best interests of his landowner clients; their best interests demanding that they receive 100% of their just compensation.

2)   This case does not meet the 1882 *Greenough* equitable test that when a litigant incurred fees and expenses to create a pool of money, it would be inequitable to permit recovery by other claimants, unless each claimant contributed to that litigant's fees & expenses.  Since no litigant is liable here for fees and expenses under the URA where the government pays all reasonably incurred fees and expenses, there is no inequity to be remedied;

3)   According to 4  Newberg on Class Actions, Section14:6 (4th ed.), footnote 3.50 at 135,  there are several other reasons why the common fund doctrine may be inapplicable including:

a.   no basis to resort to these federal equitable doctrines when the basis for the award is the settlement agreement, "a contract under state law, and not federal law", citing *In re Volkswagen and Audi*

Page 14

*Warranty Extension Litigation,* 692 F.3d 4, 16 (1ˢᵗ Cir. 2012);

b.   when "the reasonable fees class counsel will receive come not out of the settlement proceeds, but are in addition to the settlement proceeds", citing *In re Volkswagen,* supra at 17, and also referring to *Savoie v. Merchants Bank,* 84 F.3d 52, 56 (2d Cir. 1996) ("The common fund doctrine does not apply, however, when fees are sought from the assets of the losing party..."); and

c.   when attorneys fees are already provided by a statutory fee-shifting regime because "there is no iniquity to redress" when defendants are to pay attorneys' fees, citing *U.S. ex rel. Bogart v. Kings Pharmaceuticals,* 493 F.3d 323, 331 (3d Cir. 2007).

5.   *Are there other reasons why the trial court's decision was wrong? Yes.
     If so, what reasons?*

As the Supreme Court said in *Perdue v. Kenny A.,* the wide-spread use of lodestar attorney fees is in accord with "the aim of the fee-shifting statutes", ..."cabins the discretion of trial judges, permits meaningful judicial review, and produces reasonably predictable results", leading to desired uniformity and ensuring that the attorney fee calculation "is objective and capable of being reviewed on appeal" and 'does not produce windfalls to attorneys'. *Perdue,* at 552. Unfortunately, that did not happen here; when the lower court awarded both fee-shifting URA attorney fees and awarded additional, non-existent "common fund" attorneys fees, without even conducting the well-advised lodestar cross check, a $33,172,243.74 windfall  was produced, in direct contravention of the URA congressional mandate, the 2010 Supreme Court decision in *Perdue,* and this Court's decision in *Bywaters*. The safeguards were disregarded.  This jaw-dropping award of windfall "common fund" attorneys fees should not be permitted to stand; it should be reversed.

Page 16

Furthermore, when there is no showing that Class Counsel faithfully apprised the class claimants about the true effect of having the government pay all reasonably incurred fees and expenses in Fifth Amendment taking cases, Class Counsel did not obtain informed consent to even ask for additional fees over and above his $1,920,000.00 lodestar, pay day. Asking for additional fees under these circumstances, which work to defeat the purpose of the URA congressional mandate, does not meet even the minimal ethical standards expected of a lawyer who must put his clients' interests ahead of his own self-interest.

Class Counsel's asking for additional, windfall attorneys fees directly violates the URA's congressional mandate that his clients receive and keep 100% of their just compensation. His calling the aggregated amount of individually calculated taking claims a "common fund", in order to disingenuously claim an entitlement to "common fund attorneys fees", even though no true common fund exists and even though there is no inequity to be redressed, is simply dishonest.

It was for these reasons that Seattle attorney fee expert Peter S. Ehrlichman, former Chair of the Washington State Bar Discipline Committee,  reviewed the ethical requirements and declared that

If Class Counsel has not complied with his professional responsibility to obtain meaningful, informed consent to his attempt to take almost $40,000,000 from his clients' just compensation, Class Counsel has violated the letter and the spirit of the Rules of Professional Conduct; specifically, violations of RPC 1.4 (for the lack of informed consent) and RPC 1.8 (for Class Counsel's soliciting what amounts to be a substantial gift from his client). These apparent violations should be brought to the attention of the Washington State Bar Association and to every other affected bar which has jurisdiction over Class Counsel and his apparent misconduct.

[A58]

Class Counsel's withholding of documentation from Petitioners, who had requested it for months [A189], created problems; petitioners were not able to reasonably discover the causes of the $585,000 lower valuation and discrepancy in the devaluation of Petitioners' three lots compared to the Youngs' almost identical claim, just 50 feet away from Petitioners' northern property line, that possessed essentially the same characteristics as Petitioners' taking claim. As a result, Petitioners were unable to give informed consent to their individually calculated taking claim. And since there is no opt-out provision, it was even more important that the critical documentation be turned over to Petitioners before the Fairness Hearing, (in accordance with Class Counsel's

ethical obligations to promptly comply with the reasonable requests for information and to provide all information necessary to permit Petitioners to give informed consent, as required by Washington RPC 1.4). Class Counsel's refusal to comply with his obligations unfairly compromised Petitioners at the Fairness Hearing and resulted in unfairness, not just "frustration" as noted by the lower court [A6].

The lower court's decision, unless it is reversed, will be used by Class Counsel to bolster unsupportable "common fund" attorneys fees motions in his other 15 to 20 takings cases which are in the Court of Federal Claims pipeline, just like he used his prior case awards like *Raulerson* (where he obtained over $10,000,000 in additional fees, over and above the URA lodestar fees), to bootstrap his motion for additional fees in this case. The lower court cited his cases of *Raulerson, Moore,* and *Bishop* in its Reported Opinion [A13,16].

The serial abuse of class claimants' rights, the unwarranted invasion of the claimants' 100% just compensation, and the persistent disregard of the URA congressional mandate must end. This case presents the Court with the opportunity to end the abuse.

6.    *What action do you want the court to take in this case?*

Petitioners Woodley ask that this Court reverse the lower court's gross award of $35,092,243.74 "common fund" attorney fees and uphold the mandatory award of $1,920,000.00 URA lodestar attorney fees which were stipulated to be "fair, reasonable, and adequate" and which were approved by the lower court.

If this Court decides that there is an equitable basis for allowing common fund attorney fees and that such additional fees do not defeat the purpose of the URA attorney fees to keep the landowners whole, then Petitioners ask that this Court reverse the amount of the "common fund" attorney fees awarded and remand the matter to the lower court for recalculation, after conducting a thorough lodestar cross check to determine what, if any, additional attorney fees are warranted, in accord with *Perdue v. Kenny A.*, 559 U.S. 542, 130 S. Ct. 1662 (2010) , with this Court's decision in *Bywaters v. United States,* 670 F.3d 1221 (2012), and with this Court's decision and direction in this case.

As to any errors made by class counsel regarding the undervaluation of Petitioners' three-lots claim, compounded by counsel's unreasonable withholding of relevant documentation,

Petitioners respectfully ask this Court to order the production of all previously requested documentation relevant to the ultimate valuation of Petitioners' individually calculated taking claim, in order to give Petitioners an informed basis to consent or object to their individual account valuation which is now part of the aggregate settlement.