**ORIGINAL**

**FILED**

SEP 29 2014

U.S. COURT OF
FEDERAL CLAIMS

By leave of the Judge

*Gretchen Morris*
*4635 90th Avenue SE*
*Mercer Island, Washington 98040*
*lexmorris@gmail.com*

September 19, 2014

The Honorable Marian Blank Horn
United States Court of Federal Claims
Howard T. Markey National Courts Building
717 Madison Place, NW
Washington, DC  20439

Re: *Longnecker Property, et al. v. United States of America*, United States Court of Federal Claims Case No. 09-173 L

Dear Judge Horn,

I am a class member in the above-referenced action and I write to object to Class Counsel's Motion for Court Approval of Fees and Proposed Division of the Common Fund ("Fees Motion") in the above-referenced action. I am not objecting to the settlement itself—only to Class Counsel's fee request.

Class Counsel's request should be denied for at least three separate reasons. *First*, fees in this case should not be measured as a percentage of the recovery, as Class Counsel proposes. Rather, they should be based on the lodestar methodology. Class Counsel have submitted neither a lodestar calculation nor any evidence that would permit such a calculation. *Second*, even if it were proper to determine fees in this case on a basis other than the lodestar calculation, the lodestar should still be calculated to provide a cross-check on the reasonableness of the fees requested. Because Class Counsel have submitted neither a lodestar calculation nor any evidence to support one, that cross check cannot be performed and the motion therefore should be denied. *Third*, setting aside the procedural issues, the request is substantively unreasonable and excessive under the circumstances (to the extent those circumstances can be gleaned in the absence of a proper evidentiary submission by Class Counsel).

A.     Class Counsel's Fees Should Be Calculated Using the Lodestar Methodology.

1.     "Reasonable Attorney Fees" Under the URA Must Be Determined by the Lodestar Methodology.

This action is subject to the fee-shifting provisions of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) ("URA"). If the action were successfully litigated to judgment, the statute would authorize the Court to award "reasonable costs,

1

disbursements, and expenses, including *reasonable attorney . . . fees*, actually incurred because of such proceeding." 42 U.S.C. § 4654(c) (emphasis added).

The law is clear that the presumptive measure of a "reasonable" fee under the statute, as under all federal fee-shifting statutes, is the lodestar calculation, which can be deviated from only in "'rare' and 'exceptional' cases." *Bywaters v. United States*, 670 F.3d 1221, 1230 (Fed. Cir. 2012) (quoting *Penn. V. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)). In 2010, the Supreme Court explained that this is so because the lodestar approximates what the attorney would receive from a client paying by the hour, is readily administrable, is objective, and produces predictable results. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-53 (2010). The Court further held that the lodestar is presumptively sufficient to induce capable lawyers to take cases subject to fee-shifting statutes and incorporates nearly all of the factors that should be considered in setting a "reasonable" fee." *Id.* at 552-53.

In short, there can be no dispute that the lodestar calculation would provide the presumptive measure of "reasonable" attorneys' fees if this case were litigated to judgment.

### 2. "Reasonable Attorneys' Fees" Under RCFC 23(h) Should Not Be 3-6 Times Higher Than "Reasonable Attorneys' Fees" Under the URA For Precisely the Same Work.

Because this case was settled, Class Counsel's fee request is not made under the fee-shifting provision of the URA, but under Rule 23(h) of the Rules of the United States Court of Federal Claims. But the result should be no different. The standard imposed by Rule 23(h), however, is exactly the same standard imposed by the statute and analyzed by the Supreme Court in *Perdue*: "the court may award *reasonable attorney's fees* and nontaxable costs that are authorized by law or by the parties' agreement." RCFC 23(h) (emphasis added). It makes no sense that a "reasonable" fee for an hour's work done by Class Counsel would be higher because the case settled than it would be if the case had gone to trial. Yet, the difference between the percentage approach advocated by Class Counsel here and the lodestar approach that unquestionably would apply post-trial is enormous.

Given Class Counsel's (unsubstantiated) assertion that 2000 hours were devoted to litigating this case, the requested fees amount to more than $1800 per hour—that is not a market rate for legal services anywhere in the country and certainly not in this jurisdiction. The "*Laffey* Matrix," provides market fee rates for attorneys in the District of Columbia and is used for determining fees under fee-shifting statutes. *See Bywaters*, 670 F.3d at 1226 & n.4. The Matrix indicates that the *highest* hourly rate—for attorneys with at least 20 years of experience—is $510 per hour. http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf (visited September 17, 2014). For new lawyers, it is only $250 per hour, and for paralegals and law clerks, $145 per hour. *Id.* Depending on who worked the hours claimed by Class Counsel, the fee request here is more than three times the lodestar and could plausibly be five or six times the lodestar. As outlined below, paying class counsel a multiple of what the lodestar provides cannot be justified.

a. **The Phrase "Reasonable Attorneys' Fees" Should Be Construed to Have the Same Meaning in Rule 23(h) as It Has in Every Federal Fee-Shifting Provision.**

The most fundamental reason that "reasonable attorneys' fees" under Rule 23(h) and the URA are the same is that the statutory language is the same. *James v. Santella*, 328 F.3d 1374, 1378 (Fed. Cir. 2003) (in construing statutory language, court cannot ignore congressional use of identical language in two statutes). "[T]he Supreme Court has advised," moreover, "that all federal fee-shifting statutes calling for an award of 'reasonable' attorneys' fees should be construed 'uniformly.'"[1] *Bywaters*, 670 F.3d at 1230. The Supreme Court made clear in *Perdue* that it was interpreting the same phrase—"reasonable attorneys' fees"—that appears in both Rule 23(h) and the URA. As the Court put it: "Unfortunately, the statute does not explain what Congress meant by a 'reasonable' fee" and therefore the Courts task was to identify[] an appropriate methodology for determining a 'reasonable' fee." *Perdue*, 559 U.S. at 550. The Court's task in this case is exactly the same—to identify an appropriate methodology for determining a 'reasonable' fee. There is no basis for construing "reasonable attorneys' fees" to mean an hourly rate that is higher, or to apply a method of calculation that is different, when a case settles instead of going to trial. Certainly, Class Counsel has not offered such a basis.

b. **The Case Involves a "Common Fund" Does Not Warrant Applying a Different Methodology to Calculate a "Reasonable" Fee.**

Class Counsel correctly asserts that plaintiffs' counsel in a class action may be entitled to a fee out of a "common fund" that they helped create. Fees Motion at 7 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). As the Supreme Court explained, this principle "rests on the perception that persons who obtain the benefit of a lawsuit [*i.e.*, class members] without contributing to its cost are unjustly enriched at the successful litigant's expense." *Id.* But there is no risk of such unjust enrichment here. Whether Class Counsel is paid from the main settlement corpus or from the portion that is designated as compensation for statutory fees, Class Counsel will be paid and so any recovery by class members will not be "at the successful litigant's expense"—it will be at the expense of class members or the government. The common fund doctrine does not speak to how the fee for counsel should be calculated, nor does it have any bearing on what a "reasonable fee" is—it means only that a fee of zero would be unfair.

Class Counsel also asserts that the common fund doctrine applies in cases that are subject to a statutory fee-shifting provision. Fee Motion at 7-8. That proposition is by no means clear under the URA, because, "unlike other fee-shifting statutes, the URA is uniquely tied to the Fifth Amendment principle of just compensation" and "is designed to make plaintiffs *whole*." *Moore v. United States*, 63 Fed. Cl. 781, 788 (2005) (emphasis added); *see also id.* ("Landowners are entitled under the

---

[1] Ordinary "principle[s] of statutory construction appl[y] to interpreting the Federal Rules of Civil Procedure." *Hillis v. Heineman*, 626 F.3d 1014, 1017–18 (9th Cir.2010); *accord Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) ("Because the Federal Rules of Evidence are a legislative enactment, we turn to the 'traditional tools of statutory construction' in order to construe their provisions." (citation omitted)).

3

statute to reimbursement of a reasonable attorney fee on the theory that making the landowner suffer that expense would leave him with only partial compensation."). Applying the common fund doctrine to settlements in cases subject to the URA therefore would undermine the statute's purpose of giving full effect to the Fifth Amendment. Regardless, the common fund doctrine does not address the question of *how* the fee award should be calculated. It simply establishes that a fee should be paid, and thus is silent on the question presented here.

      c.    **The "Risk Premium" Theory Does Not Provide a Basis For Awarding a Higher Hourly Rate in a Case that Settles Than in a Case that Goes to Trial.**

For the proposition that the percentage method should be used, Class Counsel offer only two arguments.[2] The first is that Class Counsel, not the class members, took the risk that no recovery would result. That argument cannot justify using a percentage fee approach here for at least two independent reasons.

*First*, Class Counsel's assumption of the risk of non-recovery cannot differentiate between URA cases that settle and those that go to trial. Class Counsel took the risk that the case would fail when they agreed to take the case—they did not know then whether it would settle or go to trial. Under *Perdue* and *Bywaters*, the lodestar pays Class Counsel a "reasonable fee" for taking on that risk if the class had prevailed at trial. There is no logical reason that the amount necessary to provide Class Counsel adequate compensation for taking that risk tripled, or even quadrupled or sextupled, because the case settled. Indeed, the perverse result of Class Counsel's approach is that they supposedly became entitled to a giant risk premium by doing the one thing that would eliminate any remaining risk—settling.[3] It is backward to pay a risk premium to counsel who choose to reduce their risk by settling, but not to counsel who take on the additional risk of trial.

*Second*, the Supreme Court squarely rejected the risk premium argument in *City of Burlington v. Dague*, 505 U.S. 557, 562-63 (1992). The Court found that the risk premium notion has two components: (1) risk as to the legal and factual merits of the case; and (2) risk as to the difficulty of establishing those merits. *Id.* The first factor is not addressed by the lodestar, but the Court found that there were significant policy reasons *not* to compensate lawyers for taking on the risk that the case lacks merit—such as that it will induce lawyers to take on cases of dubious merit. *Id.* at 563. The second factor, the Court found, is fully compensated by the lodestar. *Id.* at 562-63. "Taking account of it again through a lodestar enhancement amounts to double counting." *Id.* at 563. The Court

---

[2] Counsel cites cases where the percentage method was used, but that is different from making a reasoned argument to support what those courts did.

[3] Here, of course, there was very little risk by the time the case settled because summary judgment had already been granted. But that simply highlights one of the problems with drawing such stark distinctions between litigated cases and settled cases. Class Counsel could do less work and seek a much higher fee (under their view of the law) by settling than by litigating over the valuation of the property. If they are right about the law, then that creates a dramatic conflict of interest for Class Counsel—they are personally better off settling even if the government is offering compensation far below the true value of the property.

4

therefore found that a "reasonable" fee should not compensate counsel for that risk. *Id.* Although *Dague* was a fee-shifting case, nothing about the Court's reasoning applies any differently in the context of a settlement.

Courts have tried to distinguish *Dague* from the "common fund" situation on the purported ground that *Dague* was concerned with forcing *defendants* to pay an amount they should not have to pay. *See, e.g., In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994). That argument rests on a false premise. The Court in *Dague* did not express any concerns about unfairness to defendants forced to pay such fees. That purported rationale appears nowhere in the opinion. Rather, what the Court said—several times—is that it was addressing how a "reasonable" fee is calculated. *Dague*, 505 U.S. at 561-62 (quoting relevant statute as providing for "*reasonable attorney . . . fees*") (Court's emphasis); *id.* at 562 ("We have establish a 'strong presumption' that the **lodestar represents the 'reasonable' fee.**"); *id.* at 562 (stating that encouraging filing of nonmeritorious claims is "an unlikely objective of 'reasonable fees' provisions"). In any event, even the Court's concern in *Dague* had been to protect defendants from having to pay an unfair amount, that would not meaningfully distinguish the situation from an award under Rule 23. When evaluating fee requests under Rule 23, the courts have a *fiduciary* obligation to protect the interests of class members. *In re Cendant Corp. Litig.*, 264 F.3d 201, 231 (3d Cir. 2001). It makes no sense that, in fulfilling that fiduciary obligation to class members, courts would be less vigilant than they are in protecting defendants in fee-shifting cases. Viewed in this light, it is unsurprising that the term "reasonable" is used in both Rule 23(h) and the fee-shifting statutes. In both contexts, that term gives the courts a textual basis for protecting the people paying the fees—be they class members or defendants—from over-reaching plaintiffs' counsel.

The Supreme Court has squarely held that the lodestar provides an adequate incentive for capable counsel to take cases in which a federal fee-shifting provision is applicable. *Perdue*, 559 at 552. This is such a case and the "risk premium" cannot be justified as an inducement for lawyers to take cases of this type.

### d. Whether or Not Class Counsel Have Been Saying They Would Ask for 35% Is Irrelevant.

Class counsel's only other argument in favor of the percentage approach is that they told class members that they would request a 35% fee.[4] Fees Motion at 11. But contingency fee agreements executed by named plaintiffs are routinely ignored by courts when evaluating a fee request under Rule 23. *See, e.g., In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011) (noting that special master properly gave little weight to contingent fee agreement with named plaintiffs, "recognizing that named plaintiffs are usually cat's paws of the class lawyers"); *Moore*, 63 Fed. Cl. at 787 ("We do not agree that the fee arrangement with named plaintiffs creates a presumption of reasonableness."). To the extent Class Counsel is mere statements they claim to have made to class members, rather than agreements executed with class members, those statements are even less relevant.

---

[4] As with every other factual assertion made by Class Counsel, this statement is made without reference to any evidentiary support, which, by itself, warrants disregarding it.

The Court's obligation is to determine a "reasonable" fee in the matter and whatever counsel have been saying they would demand has no bearing on whether their request is reasonable.

\* \* \*

There is no other reason to pay higher fees to counsel who settle cases subject to the URA than those who litigate them. Higher fees for settling counsel obviously cannot be justified based on the amount of work performed—the lodestar takes the number of hours into account and, moreover, going to trial is more work than settling, not less. The quality of counsel cannot justify a distinction either, as it is the same counsel whether the case settles or goes to trial. There simply is no basis for paying Class Counsel more for exactly the same work simply because Class Counsel chose to settle the case, rather than take it to trial.

**B.    At a Minimum, the Lodestar Should Be Used to Cross-Check the Fee Request, and Class Counsel Have Made that Impossible By Failing to Submit the Requisite Records.**

Even in cases where the percentage method is utilized, the lodestar is used to cross-check the reasonableness of the fees. *See, e.g., In re AT&T Corp.*, 455 F.3d 160, 164 (3d Cir. 2006) ("[W]e have recommended that district courts use the lodestar method to cross-check the reasonableness of a percentage-of-recovery fee award."); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002) (affirming use of lodestar cross-check); *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) ("[W]e encourage the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage."). In a URA case, the fee award in a class action settlement should be "a reasonable approximation of the amount due under the statute." *Moore*, 63 Fed. Cl. at 785.

Here, Class Counsel have not offered a lodestar calculation and have not submitted any of the information needed to prepare one. Among the serious issues raised by this omission are:

- It is unknown who worked these hours—as noted above, market rates under the *Laffey* Matrix range from $145 for paralegals to $510 for the most senior lawyers, so although $1800 is obviously egregiously high, it is unclear by how much.

- It is similarly unknown how reliable the 2000 hour estimate is or whether all of the time was reasonable to spend—if the 2000 hours figure is off by as little as 100 hours, that could increase the requested average hourly rate by $50.

The Fees Motion should be denied because Class Counsel has failed to submit this basic information needed for the Court to assess the reasonableness of the fee request.

**C.    Even if Class Counsel Were Entitled to a Percentage and Have No Obligation to Provide Any Evidence of the Work Done or Its Value, the Requested Fees Are Too High.**

Setting aside the procedural infirmities of Class Counsel's motion, the requested percentage is just too high. *First*, Class Counsel incorrectly suggest that 35% is "typical" in class actions. Fees

Motion at 11. In fact, that percentage is quite high (indeed, higher than almost all of the awards referenced in Class Counsel's brief). As the Seventh Circuit noted, an academic study of class action fee awards showed an average award in consumer class actions of either 16.2 percent or 24.3 percent, depending on which dataset was used. *In re Trans Union Corp. Privacy Litig.*, 629 F.3d 741, 744 (7th Cir. 2011). In another rails-to-trails case litigated by Class Counsel under Washington law, the court noted that an empirical study of fee awards (more recent than the once cited by the Seventh Circuit) showed an average fee award of 23% across 689 cases. *Haggart v. United States*, 116 Fed. Cl. 131, 146 (2014). The requested percentage here is decidedly on the high end of the spectrum and not remotely typical.

Not only is the requested fee higher than what is commonly awarded, the circumstances of this case warrant a fee that is lower than the average. Notwithstanding the many adjectives Class Counsel use to characterize the burdens they bore in litigating the case, the case did not actually entail very much litigation. The government did not file a motion to dismiss. The government stipulated to class certification. Most strikingly—and in contrast to almost every other kind of class action, it appears that there was little or no formal discovery. While, again, Class Counsel's failure to submit any evidence concerning the time they billed requires some conjecture about what they did, it appears that Class Counsel took no depositions and had no multi-million page document production to review, as is common in class actions. And, of course, no discovery means no meet-and-confer letters or discovery motions to draft. Class Counsel briefed one major motion—the summary judgment motion. And even that motion should have been very efficiently briefed because many of the issues in that motion overlapped with other cases Class Counsel was litigating, such as *Haggart*. In short, this is a case that could be—and apparently was—litigated with far less effort than is required for most class actions in the federal system. The fees paid to Class Counsel should be correspondingly modest.

For the foregoing reasons, the Fees Motion should be denied.

Sincerely,

*/s/ Gretchen M. Morris*

Gretchen M. Morris

cc:     Steven M. Wald, Esq.