# In the United States Court of Federal Claims

```
* * * * * * * * * * * * * *     *
LONGNECKER PROPERTY, et al.,    *
For Themselves As Representatives  *
of a Class of Similarly Situated   *
Persons,                        *       No.  09-173L
                                *       Filed: December 16, 2014
              Plaintiffs,       *
      v.                        *
                                *
UNITED STATES,                  *
                                *
              Defendant.        *
                                *
* * * * * * * * * * * * * *     *
```

## O R D E R

The above captioned class action was filed in the United States Court of Federal Claims on March 19, 2009.  Plaintiffs sought just compensation from the United States based on allegations that the federal Surface Transportation Board's issuance of a Notice of Interim Trail Use on a railroad corridor between milepost 3.27 in Quadlock and milepost 6.73 near Fones Road, in Olympia, in Thurston County, Washington, has interfered with property interests recognized under Washington state law, and alleged that this interference constitutes a taking of private property for public use, requiring compensation in accordance with the Fifth Amendment to the United States Constitution. In 2010, the court granted the motion to certify the class action and subsequently, potentially eligible persons were given notice of the certified class action and were offered the opportunity to opt-in to the class. In total, 65 class members opted-in to the class action. In 2012, the court issued an opinion on the scope of the easements of certain deeds, granted plaintiffs' motion for partial summary judgment, and denied defendant's cross-motion for partial summary judgment. In 2014, the parties reached a final settlement of all remaining issues in the case, and submitted a Motion for Approval of Notice to Class Members Regarding Proposed Class Action Settlement. On September 8, 2014, the court granted the parties motion and scheduled a fairness hearing in Seattle, Washington for September 26, 2014. On September 26, 2014, the court held the fairness hearing. The parties' addressed the proposed settlement of the above captioned caption class action.  As agreed to by the parties, the proposed settlement would include: $7,060,144.96 in principal, $3,536,466.56 in interest,[1] and

---

[1] The interest amount was calculated with a specific expected payment date. Due to the objection by one class member, and the briefing on the issues raised by that class member, payment could have not been made by the expected payment date. Therefore, on December 12, 2014, in response to the court's inquiry, the parties indicated to the court that plaintiffs should receive interest on the principal at a 4.00% interest rate,

$629,000.00 for reimbursement of attorneys' fees and costs pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. § 4654(c) (URA). As described in the Notice to Class Members Regarding Proposed Class Action Settlement submitted to the class members, "[t]he $629,000.00 for statutory fees and costs has been allocated between attorneys' fees of $585,535.00 (which will be used to partially reimburse you for attorneys' fees under Class Counsel's proposal) and reimbursement for reasonable costs and expenses of $43,465.00."

As reflected in the Notice, class counsel seeks 35% of total settlement amount, or $3,708,814.00, be awarded as class counsel's attorneys' fee. The Notice also reflects that because the United States has agreed to reimburse the class for $585,535.00 in attorneys' fees under applicable law, the $275,000.00 equates to approximately 5.5% of the total award, and accordingly, class counsel is effectively requesting attorneys' fees that are approximately 29.5% of the total award.

In response to court's October 14, 2014 Order, class counsel filed 83 pages of billing records, broken out by entry, which, in addition to a narrative summary, included the date, individual, hours, amount and were categorized by attorney or support staff member. The billing records also reflected a summary of the number of hours each person affiliated with class counsel worked, their billing rate and their position as an attorney, paralegal, or secretary.  The billing records reflect that ten attorneys, including at least five partners, eight paralegals, and one secretary, performed 2,548.50 hours of work over a five year period in the above captioned class action for a total of $958,480.00 billed. Although the summary reflects a total amount less than $3,708,814.00 billed during the course of litigation,[2] as noted in their Motion for Court Approval of Fees and Proposed Division of the Common Fund, however, "Plaintiffs' counsel agreed to undertake this representation according to terms of a contingent fee agreement providing that counsel would receive 35% of the total recovery received for the property owners."  Class counsel also notes in a footnote that "[a]ll Class Members who signed contingency fee agreements before the case was certified as a class agreed to a 35% contingent fee of the total recovery, which was defined to include land values, interest for delay damages, and statutory attorneys' fees. Nevertheless, Class Counsel is not seeking recovery of a percentage of statutory attorneys' fees in this case."

Class counsel has received consents to the settlement from 64 out of 65 plaintiffs.  One plaintiff filed a written objection.  The objecting class member notes that "I am not objecting to the settlement itself-only to Class Counsel's fee request." The objecting class member raises three objections to the class counsel fee request:

---

compounding annually for the period between May 24, 2004 and the date of payment. The judgment reflects this change.

[2] The court notes, however, additional time has been expended since the filing of the billing statements as class counsel also has filed responses to the government and one objecting class member's response to the billing records.

*First,* fees in this case should not be measured as a percentage of the recovery, as Class Counsel proposes. Rather, they should be based on the lodestar' methodology. Class Counsel have submitted neither a lodestar calculation nor any evidence that would permit such a calculation. *Second,* even if it were proper to determine fees in this case on a basis other than the lodestar calculation, the lodestar should still be calculated to provide a cross-check on the reasonableness of the fees requested. Because Class Counsel have submitted neither a lodestar calculation nor any evidence to support one, that cross check cannot be performed and the motion therefore should be denied. *Third,* setting aside the procedural issues, the request is substantively unreasonable and excessive under the circumstances (to the extent those circumstances can be gleaned in the absence of a proper evidentiary submission by Class Counsel).

(emphasis in original).

Additionally, the objecting class member indicates that "[t]he other absent class members did not consent to a 35% fee and are similarly situated to me." Class counsel responds to the "absent" allegation by indicating that the objecting class member's position is incorrect because "[a]l of the class members are present before the Court. Each of them signed an engagement letter or executed an Entry of Appearance form, was listed as a Plaintiff on the most recent Amended Complaint, received notice of the proposed settlement and fees, and consented to the proposed settlement including the request for fees."

Class counsel also emphasizes that "Class Counsel received explicit approvals of the settlement, including the decision to agree to Class Counsel's requested fee of 35%, from 64 out of the 65 landowners." Class counsel notes that each of the other 64 plaintiffs received, and ultimately returned, the Notice to Class Members Regarding Proposed Class Action Settlement issued by the court. Class counsel correctly quotes the language of the Notice which states that "Class Counsel has proposed that 35% of this settlement amount, or $3,708,814.00, be awarded as Class Counsel's attorneys' fee." Class counsel also notes that the each of the Individual Class member's Settlement Disclosure Statements stated: "Class Counsel are seeking approval from the Court to allow a deduction of 35% from compensation plus interest, as a contingency fee. This is an estimated amount of attorneys' fees pending approval by the Court. No deductions for costs will be made." Therefore, class counsel argues that "it was very apparent that the 35% fee request was part of the overall settlement proposal from the perspective of each individual Plaintiff, in that it directly affected what each Plaintiff would receive, and each Plaintiff was obviously being asked to consent, object, and/or comment upon that aspect as well. Ultimately, 64 of the class members consented, and that documentation was provided to the Court."

Defendant, now, belatedly, having not taken a position when the objection was first filed, shares the same concerns as the objecting class member regarding class

counsel's fee request. Like the objecting class member, defendant does not raised any objections to the settlement itself. Defendant indicates that "regardless of what method the Court uses to calculate attorneys' fees, the Court should perform a lodestar check on the reasonableness of the fee award." Defendant now states that "[t]he specific percentage (35%) Class Counsel requested is at the high end among percentage fee awards." Defendant also claims that:

> In Trails Act takings cases, large compensation amounts are primarily a function of the value of the property rather than class counsel's exceptional skill or effort, especially here where the parties engaged in settlement negotiations and retained a joint appraiser to arrive at the amount of compensation. In this case, we believe that Class Counsel should have to demonstrate that there is an equitable reason for an enhancement that was not permissibly considered in calculating the statutory fee.

Additionally, defendant raises the issue that although "engaged clients may have agreed to a 35% contingency fee award, there is no evidence that opt-in claimants were notified of the percentage fee that Class Counsel intended to seek prior to *opting-in*." (emphasis in original).

Class counsel responds that "Class Counsel negotiated fiercely over what portion of those fees are recoverable. Class Counsel fought on behalf of the class members to increase the credit they would receive. The Court is well aware of the time and effort taken by Class Counsel and is familiar with the care taken by Class Counsel to make sure the settlement, including fees, is fair to the class." Class counsel points out that:

> Class counsel has already spent more than 2,000 hours working on behalf of the Class Members over the course of over 5 years. In addition, Class Counsel has already incurred substantial out-of-pocket expenses on behalf of the Class and will incur additional expenses related to travel expenses, meetings with Class Members and finalizing the Settlement and distributing individual Settlement awards to Class Members, of which Class Counsel will not seek additional reimbursement. To date, Class Counsel has been paid nothing for their work on this case. The Class Members' property was originally taken in 2004. During the more than five years since the case was filed, Class Counsel has continually met with and advised and kept Class Members apprised of the status of this case. Numerous Class Members have called Class Counsel—some frequently—asking when this case will be resolved and what can be done to achieve a final resolution.

Class counsel also emphasizes that numerous decisions by Judges of this court have approved contingency fee agreements and awarded class counsel similar percentages of common funds. See, e.g., Moore v. United States, 63 Fed. Cl. 781, 785-86 (2005) ("A request for some percentage of the total award is not inappropriate,

despite the fact that the parties have settled the matter of statutory fees and that the resulting fee would be higher than that received under the fee-shifting statute. . . . Thus, class counsel may request an award of fees from the common fund on the equitable notion that lawyers are entitled to reasonable compensation for their professional services from those who accept the fruits of their labors.").  Class counsel also identifies that a number of Judges have approved contingency fee amounts similar to the 35% that class counsel seeks in this case.  See id. at 789 (Judge Bruggink lowered the contingent fee percentage from the requested 40% to 34%); Raulerson v. United States, 108 Fed. Cl. 675, 680 (2013) (Judge Margolis approved a 33% contingency fee); Bishop v. United States, No. 10-594L, 2013 WL 4505991 (Fed. Cl. Aug.19, 2013) (Judge Firestone approved a 33% contingency fee).[3]

Defendant responds that "[t]he specific percentage (35%) Class Counsel requested is at the high end among percentage fee awards."  Defendant, unlike class counsel, did not cite to any Rails to Trails cases for this statement.  Moreover, defendant notes that "[w]hile other courts in Trails Act takings cases have awarded a percentage of compensation as a fee award, none of those decisions has taken a hard look at whether a percentage, rather than the lodestar amount, is appropriate." Defendant also states that "[t]he leading case in which the CFC [United States Court of Federal Claims] awarded attorneys' fees as a percentage share of a purported common fund is Moore v. United States, 63 Fed. Cl. 781 (2005)."  Defendant notes the Moore decision indicates that counsel would have an incentive not to settle if counsel were limited to the URA fee award, and reaches a sweeping conclusion that "[w]hile it may be true that limiting a recovery to URA fees may seem to discourage an early settlement, such would be the case in any takings action that is not certified as a class action. Consequently, Moore, and the cases following Moore relied upon by Class Counsel, provide little guidance for the Court in this action."

In its brief filed in both this case and in another case before the undersigned, Finch v. United States, No. 12-92L, class counsel noted, "[a]ll Federal Claims Court judges in URA cases who have considered it have granted Class Counsel's request for payment of fees out of the common fund they created." (citing Haggart v. United States, 116 Fed. Cl. 131 (2014);[4] Raulerson v. United States, 108 Fed. Cl. 675; Voth Oil Co.,

---

[3] Class counsel also noted that the objecting class member raised the issue of whether it was appropriate for class counsel to receive funds from the common fund instead of solely from the fee shifting provision of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970.  As class counsel correctly notes, fee shifting statutes "govern a different relationship than private fee agreements and therefore, do not preclude claims for fees plaintiffs' owe under a contingent fee agreement.  Class counsel is also correct that "a fee shifting statute does not preclude a court's inherent equitable power to grant an attorney fees from a common fund."

[4] The court in Haggart, however, noted that "judges in this court have been divided on the proper composition of the common fund. Some have defined the common fund to include the principal amount, interest, and statutory fees, which allows class counsel to take a percentage of these three items combined.  Others have defined the common

Inc. v. United States, 108 Fed. Cl. 98 (2012); Moore v. United States, 63 Fed. Cl. 781 (2005); Bishop v. United States, No. 10-594L, 2013 WL 450991 (Fed. Cl. Aug.19, 2013); Janssen v. United States, Case No. 09-559 (Fed. Cl. Oct. 17, 2014)).[5]   Even in Haggart, in which Judge Lettow, used a sliding scale for percentage of payment, the court determined that "the percentage-of-recovery method [for calculating a common fund fee award] is widely used to assess the reasonableness of fees."   Haggart v. United States, 116 Fed. Cl. at 144 (Judge Lettow determined, given the large dollar figures at issue in the case, "[t]he court will award class counsel 30% of the first $50 million, 25% of the next $50 million, and 20% of all monies over $100 million. This scaled methodology recognizes the complexity of the case and the hard work by class counsel, but prevents a windfall resulting from the unusually high value of the land at issue."). This court likewise determines that the percentage-of-recovery method is appropriate in the above captioned class action.

In response to the objecting class member's third allegation, that "the request is substantively unreasonable and excessive under the circumstances (to the extent those circumstances can be gleaned in the absence of a proper evidentiary submission by Class Counsel)," the court instructed class counsel to submit its billing records and instructed the parties to comment on the filing. In reviewing the billing records, the objecting class member states: "While the time records include some vague entries, which make it difficult to discern exactly what was done or whether the work was necessary to prosecute the action, most of the time entries appear to be reasonable and appropriate."[6] The objecting class member indicated, however, "the $958,480 number on counsel's submission significantly exceeds the lodestar amount because the rates applied are meaningfully higher than the lodestar rates."[7] The objecting class member

---

fund to include only the principal amount and interest, and permitted class counsel to take a percentage of the two items." Haggart v. United States, 116 Fed. Cl. at 144 (citations omitted).  For example, in Janssen v. United States, Case No. 09-559 (Fed. Cl. Oct. 17, 2014), Judge Merow determined that the amount that the government paid under the URA would be subtracted from the total amount payable by the class members from the common fund  and approved attorneys' fees calculated as 33% of fair market value of properties plus prejudgment interest. See also Voth Oil Co. v. United States, 108 Fed. Cl. at 105 (Judge Firestone found a 40% contingency fee agreement, offset by the statutory fee award, was reasonable).

[5] The undersigned likewise granted class counsel's request for payment of fees out of the common fund.  See Finch v. United States, No. 12-92L (Fed. Cl. Nov. 21, 2014).

[6] The objecting class member, however, objects to the Class Counsel's billing for the fee request and related litigation, arguing, "[n]one of that work was done for the benefit of the class and the class should not be made to pay for it."  The court notes it was the court which required class counsel to respond to the class member's filing and to submit the billing records.

[7] The defendant, in responding to the billing statement indicates, "[a]s the United States stated in its Response to Class Counsel's motion for an award of attorneys' fees, the

also asserts, "the claimed rates are almost always higher than the Laffey Matrix[8] for Messrs. Sears and Wald and Ms. Bettenhausen, the attorneys who worked on the matter from the beginning to end and had the greatest number of hours."  Furthermore, the class member argues "Class Counsel's requested fees are approximately four times the fees actually incurred under assumptions most favorable to Class Counsel."

The defendant's submission in response to the class counsel's submitted billing statement identifies certain general categories of billing for which defendant argues class counsel should not fully recover.  For example, defendant argues that "[h]ours spent on client development are not the type of hours that are typically billed to a paying client and, therefore, should be excluded from plaintiffs' reimbursement request," "[a]pplicable case law also allows for a deduction of 50% of time spend [sic] in travel," and "plaintiffs are not entitled to compensation for hours relate to litigation of unsuccessful claims."[9]

Responding to defendant's categorical reductions, class counsel notes that "[t]he government contends that time spent by Class Counsel meeting with clients is nonreimbursable under the lodestar because it is 'client development.' Class Counsel flatly rejects this characterization because it is based upon nothing more than wild speculation as to the content of Class Counsel's meetings with their clients." Responding to defendant's arguments regarding "unsuccessful claims," class counsel argues "[t]he government's arbitrary reduction does not reflect the reality of this litigation, which is that virtually none of Class Counsel's time was related to the litigation of those specific claims."  Likewise, related to defendant's claim about reducing travel time by 50%, deduction of 50% of time spend [sic] in travel, class notes that "[t]here has been no evidence submitted by the government that it is customary for attorneys practicing similar complex federal litigation in the St. Louis market to reduce their travel

---

Court should ensure that any award of attorneys' fees are reasonable by performing a cross-check against the lodestar."

[8] The Laffey Matrix refers to a method for calculating attorneys' fees for prevailing parties established by the United States District Court for the District of Columbia in Laffey v. Northwest Airlines, 572 F. Supp. 354 (D.D.C. 1983).

[9] Defendant also specifically identified that "[a]t least eight (8) time entries do not relate to work performed in this case and should be deleted. See Ex. A (time entries stricken though in red relate to work involving Yolo and Albany Counties, which are not involved in this case as the corridor is located in Thurston County, and to a telephone call to Bill Shapiro, an attorney within the Natural Resources Section, Environment and Natural Resources Division, U.S. Department of Justice, who is not involved in this case)." Class counsel agrees, noting "[t]here is also the matter of several time entries from Ms. Connie Payne, which the government correctly identifies as seeming to relate to a different case at Class Counsel's firm. Class Counsel reports that while he believes these entries suffer from a clerical error, and do, in fact, relate to work performed on this case, because that is not known for certain Class Counsel will agree to remove those hours from the calculation." (footnote omitted).

time rates by 50%, and observes that "in each of the cases cited by Defendant there were circumstances present which led the court to determine a 50% fee reduction was warranted."

Responding to the one objecting class member's criticism, class counsel notes "[i]n her critique on Class Counsel's billing records, Ms. Morris points out that in some instances Class Counsel's rates exceed the Laffey Matrix rates. However, what Ms. Morris fails to realize is that Class Counsel's rates are not based upon the forum rates of the District of Columbia. Rather, the rates reflect what has been held by the CFC to be the reasonable rates for these same attorneys and their firm in Rails to Trails litigation, including in St. Louis, Missouri." (footnote omitted). Moreover, class counsel points out that "judges in the CFC have already ruled that the rates contained in Class Counsel's billing statement are the appropriate rates to apply in these cases." Judge Firestone approved rates of $475 per hour for Steven M. Wald and J. Robert Sears, a rate of $275 per hour for associates, and rates for paralegals at $175 per hour or $150 per hour depending on the level of experience," in Thomas v. United States, Nos. 10-54L & 10-459L, and Judge Firestone also approved hourly rates of $475 and $375 in Adkins v. United States, Nos. 09-503L, 09-241L, 09158L. Class counsel also notes that "[i]n Gregory v. United States, 110 Fed. Cl. 400 (2013), Judge Wheeler approved rates of $475 per hour for partners; $275 per hour for associates; and $150 per hour for paralegals in litigation that took place from 2009 to 2013." In Gregory, a Rails-to-Trails case, Judge Wheeler considered a motion for recovery of attorneys' fees and costs under the URA, for legal work performed by various attorneys from Baker, Sterchi, Cowden & Rice, L.L.C., class counsel in the above captioned class action. Judge Wheeler noted that "[t]he law firm is located in Kansas City, Missouri, and Plaintiffs have based their billing rates on those charged by comparable large law firms in the Kansas City market." Gregory v. United States, 110 Fed. Cl. 400, 403 (2013).

After review of the settlement, holding the fairness hearing, after careful consideration of the single class member's objections, all the subsequent briefing by the parties, and class counsel's billing records, the settlement is **APPROVED**. The Clerk of the Court shall enter **JUDGMENT** in the following amounts: $7,060,144.96 in principal and $629,000.00 for reimbursement of attorneys' fees and costs pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970. Additionally, the plaintiffs shall receive interest on the principal at a 4.00% interest rate, compounding annually for the period between May 24, 2004 and the date of payment. Class counsel's Motion for Court Approval of Fees and Proposed Division of the Common Fund Class is **GRANTED**. Class counsel is awarded a 35% fee of the award, excluding statutory attorneys' fees.

**IT IS SO ORDERED**.

s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**